[679 NYS2d 591]

In the Matter of JAMES A. REAVES (Admitted as JAMES ANDREW REAVES), an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, October 22, 1998

### APPEARANCES OF COUNSEL

*Jorge Dopico* of counsel (*Thomas J. Cahill,* attorney), for petitioner.

No appearance for respondent.

### OPINION OF THE COURT

Per Curiam.

Respondent James A. Reaves was admitted to the practice of law in New York by the First Judicial Department on March 25, 1974, as James Andrew Reaves. At all times relevant to

these proceedings, respondent maintained an office for the practice of law within the First Judicial Department.

The Departmental Disciplinary Committee seeks an order, pursuant to 22 NYCRR 603.4 (e) (1) (i), suspending respondent from the practice of law based upon his willful failure to cooperate with the Committee's investigation of a complaint that respondent seriously neglected a matter entrusted to him. The relevant facts are set forth below.

In October 1996, the Committee received a complaint from respondent's client Roger Miller. Mr. Miller had hired respondent in 1993 to represent him in an ongoing civil lawsuit against a group of entities which had borrowed money from Mr. Miller and his associates. According to the complaint letter, respondent had handled pretrial discovery and other procedures adequately until early 1996 when he suddenly abandoned all work on the case even though the parties were in the midst of scheduling important final depositions. Respondent first claimed that another project was occupying his time for more than 12 hours a day, seven days a week. Then he ceased answering Mr. Miller's messages altogether. Meanwhile, he still retained Mr. Miller's file, which rendered his client unable to engage other counsel.

The Committee thereafter informed respondent of these serious charges. By a letter dated January 8, 1997, respondent answered the complaint. The bulk of that letter described two unexpectedly massive document production efforts which he was directing for other clients. As a result of the unanticipated workload from these two cases, he had been unable to work on Mr. Miller's case. Respondent claimed that this was the first he had heard of Mr. Miller's desire to obtain his file for the purposes of retaining new counsel. Respondent promised to turn over the file within a week. His letter provided no further facts about his past or current activities in the Miller case.

Believing that the matter was settled, the Committee dismissed Mr. Miller's complaint on March 25, 1997. However, in October 1997, the late Justice Lewis Friedman of the Supreme Court of the State of New York, New York County, sent the Committee a letter and a copy of his decision in *Miller v Doniger*. This was the action which Mr. Miller had hired respondent to litigate. By that letter and decision, the Committee was advised that respondent had caused the dismissal of Mr. Miller's complaint by failing to appear for a deposition on January 14, 1997 concerning an alleged conflict of interest. At the time the Committee had dismissed Mr. Miller's complaint,

neither Mr. Miller nor the Committee knew that respondent had failed to appear at his deposition. (Justice Friedman later vacated the dismissal under CPLR 5015 [a] [1] when it became evident that Mr. Miller was not responsible for his attorney's abandonment of the action.)

In light of these new facts, the Committee commenced a *sua sponte* investigation of respondent. By letter dated October 9, 1997, respondent was requested to provide a written answer to the charge that he neglected his client's case by failing to appear for the January 14 deposition, in violation of Code of Professional Responsibility DR 6-101 (A) (3) (22 NYCRR 1200.30). Respondent was also asked to answer the charge that he was dishonest with the Committee, in violation of DR 1-102 (A) (4) (22 NYCRR 1200.3), when he failed to mention in his January 8 letter that he was required to appear at this deposition or face dismissal of his client's case.

Thus began the Committee's diligent attempts to obtain respondent's answer and his equally tireless efforts to avoid cooperating and to conceal his whereabouts. After both its October letter and a second letter in November went unanswered, the Committee served respondent with a subpoena duces tecum in December, directing him to appear for a deposition on January 16, 1998 and to bring his records of his representation of Mr. Miller. On January 10, 1998, respondent sent the Committee a letter requesting an adjournment because he would be in Tulsa on an emergency matter for a couple of weeks. He did not provide any address, phone number, or other means of reaching him in Tulsa. Respondent promised to contact the Committee to reschedule the deposition when he returned. This promise was not kept.

The Committee was unable to reach respondent during January. It informed him of the new deposition date in February via a phone message and a certified letter, but received no response, nor did respondent appear at the February 10 deposition. A few days later, he sent a fax claiming that a complex matter in Oklahoma had occupied his time round the clock, to the extent that he could not even check his voice mail. His promise to call at the end of February was never kept. The Committee left five more voice messages for respondent in his New York office throughout March and April, to no avail.

Finally, on April 24, 1998, the Committee sent respondent a certified letter warning him that if he did not contact the Committee immediately, he would face a motion requesting his suspension for noncooperation. This letter was also hand-

delivered to a receptionist in respondent's office. Respondent's secretary refused to provide the Committee's process server with a location where respondent could be reached directly. No response was received.

The instant motion was served on respondent by various means. It was mailed to his residence, attached to his apartment door on August 4, 1998, and personally delivered to a secretary at his last known office. To date, respondent has failed to answer the Committee.

Section 603.4 (e) (1) provides, in pertinent part, that "[a]n attorney who is the subject of an investigation, or of charges * * * [for] professional misconduct * * * may be suspended from the practice of law, pending consideration of the charges against the attorney, upon a finding that the attorney is guilty of professional misconduct immediately threatening the public interest." Such finding may be based upon, *inter alia*: "(i) the attorney's default in responding to the petition or notice, or the attorney's failure to submit a written answer to pending charges of professional misconduct or to comply with any lawful demand of this court or the Departmental Disciplinary Committee made in connection with any investigation, hearing, or disciplinary proceeding".

Respondent has displayed brazen contempt for the interests of his client and for the Committee's investigation. Through deceit and evasion, he has tried to escape the consequences of his neglect of his client. He has refused to comply with the Committee's subpoena and has repeatedly delayed and impeded its investigation by withholding information and making insincere promises to contact it. His conduct "evinces a shocking disregard for the judicial system" (*Matter of Gordon*, 142 AD2d 135, 137). Suspension is the appropriate sanction for such willful failure to cooperate (*Matter of DeLuca*, 193 AD2d 208, 209).

Accordingly, the Committee's motion should be granted, and respondent should be suspended immediately and until further order of this Court.

MILONAS, J. P., ROSENBERGER, WALLACH, ANDRIAS and SAXE, JJ., concur.

Motion granted, and respondent suspended from the practice of law in the State of New York, effective immediately, and until the further order of this Court.